NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARC A. ORTIZ,<br><br>    *Plaintiff*,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    *Defendant*. | Civil Action No. 14-4805<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

Before this Court is Plaintiff Marc A. Ortiz's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g) of the Commissioner of Social Security Administration's ("Commissioner") denial of supplemental security income benefits ("disability benefits") to Plaintiff.  Plaintiff argues that the Commissioner's decision as to childhood disability (1) did not combine Plaintiff's impairments and compare their combined effect to the listings; (2) inadequately explained why the "B criteria" of Listing 112.02 were not met; (3) failed to discuss the "A criteria" of the relevant listings at all; (4) failed to mention the existence of a specific listing for ADHD; and (5) came to the wrong conclusion concerning Plaintiff's limitations in the six domains of functioning.  He also challenges the residual functional capacity determination (RFC) under the standards for adult disability.  Because the Commissioner's decision is fully supported by substantial evidence and is amenable to judicial review, the Court affirms.

**I.    STANDARD OF REVIEW AND APPLICABLE LAW**

    **A.  Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if substantial evidence supports the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review. The reviewing court should not "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

### B. Analysis of Childhood Disability

"In order to determine whether a child is disabled, the administrative law judge ("ALJ") considers all relevant evidence including medical evidence, test scores, school records, and information from people who know the child and can provide evidence about functioning — such as the child's parents, care givers, and teachers." Misavage v. Barnhart, No. 01-1764, 2001 U.S. Dist. LEXIS 23329, at *16 (E.D. Pa. Nov. 30, 2001) (citing 20 C.F.R. § 416.924a(a)). The Social Security Administration examines three requirements to evaluate whether a child is disabled, namely:

> (1) that the child is not working; (2) that the child had a "severe" impairment or combination of impairments; and (3) that the

> impairment, or combination of impairments, was of Listing-level severity, meaning the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the Listings.

T.C. ex rel. Z.C. v. Comm'r of Soc. Sec., 497 F. App'x 158, 160 (3d Cir. 2012) (citing 20 C.F.R. § 416.924(a)); see also 20 C.F.R. § 416.925. The Listings referred to in step (3) for child disability determinations are found at 20 C.F.R. § 404, Subpart P, Appendix 1. To determine whether a child's impairment(s) are medically or functionally equal in severity to an impairment contained in the Listings, the Commissioner assesses all functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a).

To determine whether a child's impairment(s) are functionally equivalent to listed impairments, the Commissioner evaluates the effect of the child's impairment(s) in six domains of functioning. 20 C.F.R. § 416.926a(b)(1). These six domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An "extreme" limitation in one domain or "marked" limitations in two domains renders the child's impairment functionally equivalent to a listed impairment under the Commissioner's regulations. 20 C.F.R. § 416.926a(a). A limitation is "marked" when the impairment(s) seriously interfere with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R § 416.926a(e)(2)(i). A marked limitation is more than moderate, but less than extreme. Id. A limitation is "extreme" when the impairment(s) very seriously interferes with the child's ability independently to initiate, sustain, or complete activities. 20 C.F.R § 416.926a(e)(3)(i). If the Commissioner answers each of the three steps in the affirmative, the child is considered to be disabled.

### C.  Five-Step Sequential Analysis of Adult Disability

In order to determine whether an adult claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must ask whether the claimant has "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. The claimant bears the

burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II. DISCUSSION

### A. Procedural History

This case arises out of an application for supplemental security income filed on July 16, 2010, by Nancy Rivas behalf of the Plaintiff Marc Ortiz, who allegedly became disabled on June 28, 2010. Tr. 149-52, Dkt. No. 5. At that time, Plaintiff was a child under the age of 18. Tr. 149. This application was denied initially on January 12, 2011, and on reconsideration on January 11, 2012. Tr. 75-76. Plaintiff then timely sought review before an ALJ, and a hearing before the Honorable Hilton R. Miller occurred on December 13, 2012. Tr. 41-74. Following that hearing, the ALJ issued an opinion on January 22, 2013, finding that Plaintiff was not disabled under the standards for child and adult disability. Tr. 15-36. Plaintiff's subsequent request for review by the Appeals Council was denied on June 4, 2014. Tr. 1-4. Having exhausted his administrative remedies, Plaintiff then timely filed the instant action on August 1, 2014. Dkt. No. 1, Compl.

### B. Factual Background

Plaintiff is a twenty-one year old man who alleges disability due to variety of psychiatric impairments, including bipolar disorder, attention deficit-hyperactivity disorder ("ADHD"), a learning disorder, and borderline intellectual functioning. Tr. 23. Plaintiff testified that he does not go outside alone because that makes him nervous, and his nervousness was also the main reason he did not look for a job. Tr. 51. He testified that he could read well and enjoyed watching the History Channel. Tr. 60.

In 2003, when Plaintiff was nine years old, an IQ test assigned Plaintiff a full scale IQ score of 73. Tr. 296. In December 2007, when Plaintiff was thirteen years old, an individualized

education program (IEP) was created for Plaintiff. Tr. 154. It characterized him as having an academic disability requiring small group instruction, but also noted that he enjoyed science, was a good oral reader, and got along great with classmates and teachers, though he displayed some immature and attention-seeking behavior at times. Tr. 154-76. Plaintiff was deemed eligible for special education, as he was approximately two years behind students his age academically. Tr. 154-56. During this IEP, an IQ test assigned him a full scale IQ score of 76. Tr. 154-58.

In October 2009, Plaintiff's tenth grade IEP revealed that he had academic testing skills in the low range. Tr. 193-94. His English teacher stated he functioned on an average level of academic performance, having done well in journals and reading comprehension. Tr. 193. He was making progress from the previous year, as he was more motivated and less hyperactive, though he still had trouble talking to other students in the classroom. Tr. 193. His math teacher noted that Plaintiff tended to talk with other students rather than do his homework. Id. His history teacher described Plaintiff as a "smart young man" and a "good writer" who fooled around in class with other students, though he had adequate, age-appropriate language and communication skills. Tr. 193-94. The 2009 IEP noted that Plaintiff would benefit from a college or vocational school that offered special education services. Tr. 194.

Plaintiff entered outpatient care in November 2009 with a diagnosis of ADHD and generalized anxiety disorder, and was prescribed Concerta and risperidone. Tr. 311. He underwent a consultative examination with Kim Arrington, Psy.D., on December 1, 2010, when he was sixteen years old. Dr. Arrington noted that Plaintiff exhibited restless motor behavior, avoidant eye contact, restricted affect, and dysthymic mood, but the remaining mental status findings were generally normal. Tr. 318. His thought processes were coherent and goal-directed, his attention and concentration were intact, and he had mildly impaired recent and remote memory, low average

intellectual functioning, and fair insight and judgment.  Id.  Dr. Arrington also noted that Plaintiff was able to care for himself independently.  Tr. 319.  Based on the examination, Dr. Arrington concluded that Plaintiff remained capable of following and understanding simple directions and instructions and could maintain attention and concentration, but would have difficulty completing simple and complex tasks and learning new tasks due to distractibility.  Id.  Dr. Arrington diagnosed Plaintiff with bipolar II disorder and ADHD combined type, and rated his global assessment of functioning ("GAF") score as fifty.  Id.

Plaintiff underwent an additional consultative examination with Gerard Figurelli, Ph.D., in December 2011.  At that time, Plaintiff was still receiving outpatient treatment at the Jersey City Medical Center, but was only taking risperidone.  Tr. 327.  Plaintiff's mother admitted that he was able to take a taxicab to doctors' appointments and independently maintain personal care.  Tr. 328.  Dr. Figurelli observed that Plaintiff was alert, compliant, adequately controlled, and verbally responsive, with no significant difficulty in his ability to adequately comprehend or remain relevantly focused upon verbal interaction and basic verbal instruction, but did manifest some difficulty performing "relatively short, structured tasks intended to assess his capacity for sustained concentration."  Tr. 328-29.  Dr. Figurelli diagnosed Plaintiff with mood disorder with a history of psychotic features and panic disorder with agoraphobia, and added rule-out diagnoses of bipolar disorder and schizoaffective disorder, bipolar type, and assigned a GAF score of fifty.  Tr. 329-30.

Treatment notes from the Jersey City Medical Center indicate that Plaintiff received medication treatment and individual therapy for depressive disorder, generalized anxiety disorder, and rule-out ADHD.  Tr. 313.  During an initial mental status examination, despite not being on any medication, he exhibited pleasant and calm attitude; neutral mood; appropriate affect; goal directed association and thought process; and low-average intellectual functioning, and was

7

assessed with a GAF score of 50. Tr. 313. Plaintiff was prescribed Concerta for ADHD and remeron, and later risperidone, for anxiety in 2010. Tr. 314-15.

On January 1, 2011, state agency physician Leslie Williams, Ph.D, reviewed the evidence and determined that Plaintiff's ADHD and bipolar disorder did not meet, medically equal, or functionally equal a listed impairment. Tr. 320-25. Specifically, Dr. Williams opined that Plaintiff had less-than-marked limitations in the domains of acquiring and using information, attending to and completing tasks, and interacting with and relating to others. Tr. 322. In January 2012, reviewing state agency physician Benito Tan, M.D., opined that Plaintiff's bipolar disorder, ADHD, learning disorder, and borderline intellectual functioning did not meet, medically equal, or functionally equal a listed impairment because he had no more than less-than-marked limitations in any domain of functioning. Tr. 331-36.

In October 2012, Royston Cruickshank, M.D., a physician at the Jersey City Medical Center, completed a checklist form, indicating that Plaintiff had anxiety disorder, depression, and bipolar disorder in addition to ADHD (by history), and, without providing any explanation, indicated that Plaintiff was unable to work from October 5, 2012 through October 5, 2013. Tr. 337-38.

### C. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity at any point. Tr. 23. The ALJ determined that Plaintiff had "severe" impairments consisting of a bipolar disorder, ADHD, learning disorder, and borderline intellectual functioning. Id. The ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal any impairment in the Listings. Id. To find this, the ALJ considered Listing 112.02 (organic mental disorders) and Listing 112.04 (mood disorders), noted they shared common "B" criteria,

found in Listing 112.02, and found that Plaintiff did not have a marked requirement in at least two of the following areas (which was needed to meet the "B" criteria): age-appropriate cognitive/communicative function; age-appropriate social functioning; age-appropriate personal functioning; and maintaining concentration, persistence or pace. Id. The ALJ also considered Listing 112.05 (mental retardation), but found it was not applicable because the only IQ scores provided by the record were seventy-three and seventy-six, both of which exceed Listing requirements for mental retardation. Id.

Next, the ALJ found that Plaintiff's impairments, alone or in combination, did not functionally equal any of the Listings. Tr. 23-32. To make this finding, the ALJ evaluated "the intensity, persistence, or functionally limiting effects of claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities." Tr. 24. After reciting the Plaintiff's testimony, academic performance, physiological evaluations and treatment, and state consultations, the ALJ found:

> they do not contain a significant degree of abnormal mental status findings. To wit, there were no signs of current psychotic symptoms, and the claimant's attention, concentration and memory were not reported to be impaired to a great degree. Similarly, the claimant's academic records demonstrate that he has been diagnosed with borderline intellectual functioning, with particular deficits in perceptual reasoning, but there were also elements of his academic record that suggested great potential. . . .

Tr. 26. The ALJ explained that, while Plaintiff testified that he isolates himself from others and cannot travel, his academic and medical records do not support this claim, showing instead a reasonably ability to function socially and academically at school within a special education framework, travel, and no significantly high degree or intensity in his psychiatric symptoms. Tr. 27.

9

The ALJ next considered opinion evidence of consultative psychological examiners, noting that neither of them offered a statement regarding Plaintiff's functionality before he turned eighteen. Id. Though both treating doctors described some limitation of function, the ALJ found that neither opinion suggested that Plaintiff "would be so limited as to have marked limitations in at least two of the functional equivalence domains." Id. The ALJ also noted, and gave great weight to, treating physician Dr. Arrington's opinion because of its greater specificity than treating physician Dr. Figurelli's opinion. Specifically, the ALJ highlighted Dr. Arrington's findings that Plaintiff could follow and understand simple directions and instructions and maintain attention and concentration. Id. Finally, the ALJ gave great weight to the state agency consulting physicians, Dr. Williams and Dr. Tan, because of their expertise and the consistency of their opinions with the psychological consultative examiners and academic records. Id.

The ALJ found that Plaintiff had a "less than marked" limitation in three domains of functioning: (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others. Concerning acquiring and using information, the ALJ noted that though Plaintiff had borderline intellectual functioning and was held back in school more than once, his teachers noted several bright spots in his academic performance. The state agency consultants both opined that the Plaintiff had a less than marked limitation in this domain, and the ALJ gave these opinions great weight because of their consistency with Plaintiff's academic record. Tr. 28.

Concerning attending and completing tasks, the ALJ relied upon treating sources at Jersey City Medical Center who noted Plaintiff was compliant with treatment. The ALJ also pointed to consultative examiner Dr. Arrington's notes that Plaintiff had intact attention and concentration with only mild impairment in recent and remote memory. State agency consulting physician Dr.

Tan also noted that Plaintiff no longer took ADHD medications and had solid recall of objects at Dr. Figurelli's consultative examination, though he had difficulty spelling backwards and doing serial fives. Dr. Tan and Dr. Williams both concluded that Plaintiff had less than marked impairment in this domain; the ALJ gave their opinions great weight due to their consistency with treating sources and consultative examinations. Tr. 29.

Finally, concerning interacting and relating with others, the ALJ relied in part on Dr. Tan and Dr. Williams' opinions that Plaintiff suffered from a less than marked limitation in this area. Other evidence supported these opinions. Dr. Figurelli's consultative examination indicated that Plaintiff was goal-directed with adequate judgment and there was no evidence of a thought disorder. Tr. 30. Reports from teachers and the claimant's mother indicated that Plaintiff had a reasonable ability to socialize with others. Id. The ALJ found no limitation in each of the other functional categories for a variety of reasons. Tr. 30-32. As a result, the ALJ found that Plaintiff was not disabled before turning eighteen.

Next, the ALJ reviewed the standards for adult disability. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ then found that that Plaintiff retained the residual functional capacity ("RFC") to conduct work at all exertional levels with the following non-exertional limitations:

> Specifically, he is limited to performance of simple, routine and repetitive tasks, that can be explained. Further, the work must involve making only simple decisions, and only occasional changes in routine. He can tolerate only routine, brief, occasional and superficial contact with others. Lastly, he is limited to entry level-type work that further takes into account the need to be off-task for 10% of the workday.

Tr. 34. In determining this RFC, the ALJ considered the "objective medical and academics records" as well as credibility factors to find that Plaintiff's claims as to the intensity, persistence

11

and limiting effects of his symptoms were not fully credible. Tr. 34. The ALJ also gave little weight to treating physician Dr. Cruickshank's opinion that Plaintiff was unable to work because, apart from a handwritten note that Plaintiff was "socially isolated" with no further analysis or explanation, there was no objective evidence supporting Dr. Cruickshank's opinion. Furthermore, the statement conflicted with the medical and academic evidence indicating he was being groomed for vocational school or college and there was no objective evidence that Plaintiff's symptoms subsequently worsened. Tr. 34.

The ALJ then concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, he could perform other work—including that of a cleaner, bagger, and hand trimmer—that existed in significant numbers in the national economy. Tr. 35. In reaching this finding, the ALJ relied on the testimony of the vocational expert. Tr. 65-74. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act, and denied his claim for SSI. Tr. 36.

### D. Analysis

Plaintiff's claims span both childhood and adult years. The Court therefore will consider whether the ALJ's opinion is supported by substantial evidence under both childhood and adult disability standards.

#### 1. Childhood Disability

Plaintiff argues that the ALJ's step three childhood disability analysis is not amenable to judicial review and is not supported by substantial evidence because it (1) did not combine Plaintiff's impairments and compare their combined effect to the listings; (2) inadequately explains why it found the "B criteria" of Listing 112.02 were not met; (3) fails to discuss the "A criteria" of the relevant listings at all; (4) fails to mention the existence of a specific listing for ADHD; and

(5) came to the wrong conclusion concerning Plaintiff's capacities in the domains of functioning. None of these arguments prevail. The ALJ's opinion is amenable to judicial review and supported by substantial evidence.

### a. Alleged Failure to Consider Impairments in Combination

Plaintiff's argument that the ALJ did not consider Plaintiff's impairments in combination is unpersuasive. The ALJ did consider Plaintiff's "combined impairments," and Plaintiff has not explained how any testimony or objective medical or academic evidence show that a listing was met or medically equaled under step three.

The listings are used to identify claimants whose medical impairments are so severe they would be disabled regardless of their vocational background. 20 C.F.R. § 416.925(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990) (citations omitted). An impairment is "equivalent" to a listed impairment only where it is supported by medical findings equal in severity to all of the criteria applicable to the most similar Listing. Zebley, 493 U.S. at 531. Plaintiff has the burden to prove that his impairments or combinations thereof, meet or medically equal a listing. 20 C.F.R. § 416.925(c)(3); Zebley, 493 U.S. at 530. Plaintiff also has the burden to prove that any alleged error caused him harm because there is a reasonable possibility the decision would have been different absent the alleged error. Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an [alleged] error is harmful normally falls upon the party attacking the agency's determination").

The ALJ explained that he considered Plaintiff's "impairments or combination of impairments." Tr. 23, 33. The ALJ's opinion also discusses the effects of Plaintiff's impairment on the whole, not merely as separate ailments. For example, throughout the ALJ's discussion of the objective and opinion evidence on Plaintiff's capacity to function in the six domains of

13

functioning under functional analysis, he refers to Plaintiff's actual capacities, not only the effects of a single impairment. In short, the ALJ did consider Plaintiff's impairments in combination, notwithstanding Plaintiff's argument to the contrary.

Furthermore, Plaintiff does not explain how further consideration of his ailments in combination would prove medical equivalence here. State agency physicians, who were aware of Plaintiff's IQ scores, found that his combined impairments did not medically equal any listed impairment. Tr. 320-25, 331-36. The ALJ gave great weight to these opinions, because they were consistent with the findings of both psychological consultative examiners and with earlier academic records. Tr. 27. Neither of the consultative psychological examiners suggested that the Plaintiff had marked limitations in two or more functional equivalence domains. Indeed, Dr. Figurelli provided relatively high-level descriptions, and consequently the ALJ did not give his opinion great weight. Dr. Arrington's opinion was given great weight, but it supported the ALJ's conclusions. Plaintiff does not point to any evidence that would have led the ALJ to another outcome. As such, he has not met his burden of proof under Shinseki.

### b.  Alleged Insufficient Explanation Regarding B Criteria.

Plaintiff also argues that the ALJ insufficiently explained why the "B criteria" of the various listings, available at 20 C.F.R. pt. 404, subpt. P., app. 1, § 112.02B, were not met. The Court disagrees. The ALJ's opinion directly addresses each of the "B criteria" during his discussion of the six domains of functioning for the functional equivalence analysis.

Where an ALJ's opinion thoroughly explores the relevant evidence such that the opinion's reasoning can be discerned, the opinion is amenable to judicial review. See Jones v. Barnhart, 364 F.3d 501, 504-05 (3rd Cir. 2004) (holding that the failure of an ALJ to analyze a specific listed impairment did not require a remand as long as the ALJ's decision, when read as a whole, showed

that the ALJ considered the appropriate facts when deciding that a claimant did not meet a Listing). See also Scuderi v. Comm'r of Soc. Sec., 302 F. App'x 88, 90 (3d Cir. 2008) (ALJ not required to specifically mention any listed impairment provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing); Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 122 (3d Cir. 2008) (ALJ's failure to discuss specific Listing was not reversible error under Jones because the ALJ "analyzed all the probative evidence and explained his decision sufficiently to permit meaningful judicial review.").

Here, the ALJ explicitly decided that Plaintiff did not meet any of the relevant "B criteria." He amply discussed evidence supporting that conclusion throughout his opinion. For example, the ALJ's discussion of why Plaintiff did not have a marked limitation in three domains of functioning—(1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others—provides substantial evidence to conclude that Plaintiff did not have a marked impairment in "age appropriate cognitive/communicative function," "age-appropriate social functioning," "age-appropriate personal functioning," or ability to maintain "concentration, persistence, or pace."

The ALJ discussed Plaintiff's intellectual abilities throughout his opinion, noting that Plaintiff's teachers identified several bright spots in his academic performance, psychological consultative examiner Dr. Figurelli found Plaintiff to be of low average range intelligence, and both state agency consultants opined that claimant had a less than marked limitation in acquiring and using information. Tr. 28.

The ALJ discussed Plaintiff's social capacities throughout the opinion, noting that his academic records indicated an ability to socialize and interact with others, he had a history of fighting with others, he had no legal problems or drug or alcohol issues, and he was goal-directed

15

with adequate judgment. Tr. 30. Both state agency examiners found a less than marked limitation in interacting and relating with others.

The ALJ discussed Plaintiff's capacity for personal functioning when he noted that Plaintiff was able to take a taxicab by himself to a psychological consultation, could handle personal care and household chores, and that state agency consultant Dr. Tan noting that Plaintiff's activities of daily living were age appropriate. Tr. 32.

The ALJ specifically discussed Plaintiff's capacity to maintain concentration in a variety of contexts. Tr. 25. Psychological consultative examiner Dr. Arrington found Plaintiff's thought process was "coherent and goal directed" and his "attention and concentration were intact." Id. Psychological consultative examiner Dr. Figurelli found that Plaintiff had some difficulty performing "relatively short, structured tasks intended to assess his capacity for sustained concentration," id., but there is no indication this rose to the level of a marked limitation. Plaintiff also ceased to take ADHD medications. Tr. 29. As a result, the ALJ concluded that Plaintiff's "attention, concentration and memory were not reported to be impaired to a great degree." Tr. 26.

Thus, substantial evidence supports the ALJ's conclusion that Plaintiff did not meet or medically equal the "B criteria" required to meet the relevant listings.

### c. Alleged Failure to Consider "A criteria"

Plaintiff also argues that the ALJ erred by making no findings concerning the "A criteria" of the listings the ALJ considered. The Court disagrees. Plaintiff presents no logical reasoning or legal support as to why, given that the "B criteria" are mandatory for a finding of disability under the Listings and the ALJ found the "B criteria" were not met, the ALJ needed to discuss the "A criteria."

### d. Alleged Failure to Consider Listing 112.11 (ADHD)

Plaintiff's argument that the ALJ failed to consider Listing 112.11, for ADHD, is similarly unpersuasive. Listing 112.11 requires the same "B criteria" as those listings discussed. 20 C.F.R. pt. 404, subpt. P., app. 1, § 112.11.; 20 C.F.R. pt. 404, subpt. P., app. 1, § 112.02B. The ALJ found those "B criteria" were not met. Tr. 23-32. Because those "B criteria" must be met in order for Listing 112.11 to apply, the ALJ committed no error here.

### e. Alleged Incorrect Analysis of the Domains of Functioning

Plaintiff argues that his pathologies necessarily equate marked limitations in concentration and acquiring and using information. That is not true. Plaintiff cites no law and no evidence indicating that ADHD, psychosis, bipolar, learning disabilities, IQ above the listings threshold, or a need for external refocusing at work always create marked limitations even where they are not severe.

Plaintiff relies on an IQ score of seventy-three, three points above the Listings level, to argue that the ALJ's conclusion that Plaintiff was not markedly impaired in acquiring and using information must be wrong. But this IQ score was from 2003, when Plaintiff was only nine years old. Tr. 296. Another IQ score of seventy-six that Plaintiff received in 2009 is more accurate, due to its temporal proximity, and it is substantially above the Listings level. Tr. 157. Moreover, significant evidence from Plaintiff's academic record, psychological examiners, and state agency physicians all support the ALJ's decision. The state agency physicians found that Plaintiff's combined impairments did not medically equal any listed impairment, despite his IQ scores. Tr. 320-25, 331-36. The ALJ gave these opinions great weight and found that Plaintiff "did not have an impairment or combination of impairments that resulted in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." Tr. 32.

The ALJ discussed Plaintiff's intellectual functioning in depth throughout his opinion. The opinion that Plaintiff did not have marked limitations in concentration, acquiring and using information, and interacting and relating with others is supported by substantial evidence.

### 2. Adult Disability

Plaintiff alleges that the Commissioner's decision under the adult disability standard was defective because the ALJ did not provide substantial evidence supporting the RFC. The Court disagrees.

The determination of the RFC is the province of the ALJ. 20 C.F.R. § 416.927(d)(2); Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). In formulating the RFC, the ALJ weighs the evidence as a whole, including the medical source opinions and the credibility of the claimant's subjective complaints. See 20 C.F.R. §§ 416.927, .929, .945; Ruiz v. Comm'r of Soc. Sec., 262 F. App'x 379, 382 (3d Cir. 2008). Plaintiff's diagnoses alone do not establish that his impairments were disabling. 20 C.F.R. § 416.921. Rather, in making a disability determination, the ALJ considers the degree of any resulting functional limitations, not the mere presence of an impairment. See Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991).

The ALJ fully discussed the evidence and articulated evidence in support of the RFC he found. Dr. Arrington's finding that Plaintiff's thought process was "coherent and goal directed" and his "attention and concentration were intact," Plaintiff's cessation of ADHD medication, Tr. 29, and Plaintiff's academic records showing bright spots and recommending college or vocational school all provide substantial evidence supporting the ALJ's finding that Plaintiff can be off-task 10% of the time, but otherwise can perform simple, routine and repetitive tasks that can be explained, consisting of only simple decisions and occasional changes of routine. Similarly,

18

Plaintiff's academic records indicating an ability to socialize and interact with others, his lack of legal problems or drug or alcohol issues, his characterization by a psychological examiner as goal-directed with adequate judgment, and both state agency examiner's opinions that Plaintiff was not markedly limited in interacting and relating with others all indicate that Plaintiff can tolerate "routine, brief, occasional, and superficial contact with others." Tr. 34. Plaintiff does not cite to overlooked and contrary evidence sufficient to invalidate the ALJ's opinion here. As such, the ALJ's RFC opinion is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's denial of benefits to Plaintiff to be supported by substantial evidence. The Commissioner's denial of disability benefits is therefore **AFFIRMED.**

Date: January 14, 2016 　　　　　　　　　　*/s Madeline Cox Arleo*
　　　　　　　　　　　　　　　　　　　　　**MADELINE COX ARLEO**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**